## Roberts, Appellant, *v.* Moorhead.

*Wills—Construction—Devise to children and their survivors.*

By a provision in a will referring to a trust fund, "I further direct that after the death of my sons and daughters the same shall become vested in their respective children or their legal representatives in such manner and in such proportions as my said sons and daughters shall respectively by their last wills and testaments direct and appoint; and in default of such will and appointments, shall descend and vest agreeably to the laws regulating intestate estates. And in case any of my children shall die without lawful issue living at his or her death, then the share or shares of such deceased child or children shall be paid over to the survivor or survivors of them, share and share alike," the testator intended that in case any of his children should die without leaving issue at the time of his or her death, the share of such child should be paid to the survivor or survivors of them immediately upon the death of each son and daughter as it occurred, and the words "after the death of my sons and daughters" cannot be taken to mean after the death of all of them.

Argued Feb. 19, 1919. Appeal, No. 181, Oct. T., 1918, by plaintiffs, from decree of C. P. Allegheny Co., No. 895, Oct. T., 1917, in equity directing partition of real estate in the case of Evelyn Chew Roberts and Thomas Roberts, Jr., her husband, v. Lilian Chew Moorhead and J. Upshur Moorhead, her husband, and Fidelity Trust Company, Trustee under the Will of Mary Kerr Coffey. Before STEWART, MOSCHZISKER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Bill in equity for partition of real estate.

The facts appear in the following opinion by SHAFER, P. J., and EVANS, J., filed June 14, 1918, awarding partition:

This case turns entirely upon the interpretation to be given to a clause of the will of Andrew L. Kerr, who died January 1, 1839, leaving a widow, and six children who were apparently all minors.

After making certain specific dispositions of some of his property, the testator gave his real estate, not theretofore devised or directed to be sold, to trustees in trust to receive the rents and income and pay sums theretofore directed to be paid for the maintenance of his wife and children and invest the residue of the income until his sons should respectively arrive at the age of twenty-one years, and his daughters respectively arrive at the age of twenty-one or be married; and upon the arrival of that event to pay them their respective shares of these accumulations; and secondly, to pay to each of his sons as they became twenty-one during their respective lives, one equal share of the annual rents of the real estate; and to each of his daughters as they should respectively arrive at the age of twenty-one or be married, one equal share of these annual rents, with certain provisions as to debts and anticipation of payment. The will then continues, "I further direct that after the death of my sons and daughters the same shall become vested in their respective children or their legal representatives in such manner and in such proportions as my said sons and daughters shall respectively by their last wills and testaments direct and appoint; and in default of such will and appointment, shall descend and vest agreeably to the laws regulating intestate estates. And in case any of my children shall die without lawful issue living at his or her death, then the share or shares of such deceased child or children shall be paid over to the survivor or survivors of them, share and share alike."

The widow of the testator is now dead and five of his six children died unmarried, intestate and without issue, and Mary Kerr, intermarried with Titian J. Coffey, the last survivor of the testator's children, died in 1902, leaving a will whereby she undertakes to dispose of the shares of her deceased brothers and sisters under her father's will and as having vested in her on their successive deaths; and the question in this case is whether they did so vest as contended by the Fidelity Trust Company,

which intervened as a defendant to protect its interest under the will of Mrs. Coffey or devolved either by the will or by the intestate laws, upon the children of Mrs. Coffey who are parties to the bill.

The first question which arises on examining the part of the will above quoted is as to what is meant by the words, "after the death of my sons and daughters." Standing alone these words may be taken collectively or distributively; that is, they may mean a single period after the death of all his sons and daughters, or, in other words, at the death of the survivor of his sons and daughters; or they may refer to the time after the death of each son and daughter. In order to determine which of these the testator meant, it is necessary to look to the nature of the dispositions which are made to take effect upon this event or these events. The testator proceeds to provide for three contingencies upon the death of his sons and daughters; first, if they should die leaving children and leaving a will disposing of the property among those children; second, if they should die leaving children, but without such a will; and third, if they should die without leaving children at all.

It is very evident that all of these provisions are made to refer to the same time and all together they dispose of every possible contingency. The provision in case any of his children should die without issue living at the time of his death was that the share of such child should be paid to the survivor or survivors of them. The words "after the death of my sons and daughters" can therefore not possibly be taken to mean after the death of all of them, or otherwise we should have the testator directing a share to be paid to the survivor of his children when according to the hypothesis there could be no survivor. It seems, therefore, very certain that the provisions as to the devolution of his estate after the death of his sons and daughters were intended to take effect immediately upon the death of each son and daughter as it occurred. On the other hand, it seems equally clear that the trust cre-

ated by the will for the support of his children was intended to last until the death of the last survivor of them, as each one of them was entitled to a share in the joint income of all the property involved. When, therefore, the testator directed that after the death of each of his children, "the same shall become vested in their respective children," it is evident that he intended that they should each take their share subject to the trust while it lasted; that is, that during the continuance of the trust the children of his children should receive the income from his trustee, in other words, should hold the land subject to the trust. And this is what he means when he says that in case there are no children of his children the share of each shall be paid over to the survivor. So long as the trust subsisted it would be properly designated as a paying over.

If, instead of using the words "paid over," the testator had said that these shares should go or be given to the survivors, or had used any similar expression, there would seem to be no doubt whatever that this would give to the survivors the same share which he intended the children of each of his children to have if they existed. It is only the fact that the words "paid over" are not appropriate for the devolution of real estate, from which any doubt could arise as to this intention. If by using these words he meant only the income, then he died intestate as to the corpus of each of the five shares. There is nothing else in the will which can be construed as disposing of them. He is not to be deemed to have died intestate as to this property if by any fair interpretation of the will it can be avoided, especially where, as in this case, the provisions of the will seem to be intended to dispose of every case that may arise.

We are of opinion that while the words "paid over" are strictly appropriate only to the immediate future as the testator viewed it, yet, taking the whole of this paragraph of the will, it is sufficiently evident that the testator intended to give to his surviving children what-

ever share his will would have given to the children or issue of his children in case they existed.

It is argued by the plaintiffs that the clause in the will empowering his executors to lease or sell the coal under his farm and to treat the proceeds as rent, indicates that the testator intended his sons and daughters should take an estate less than freehold. We are unable to see how this throws any light upon the matter, as its only effect is to enable the executors to dispose of the coal at any time after his death that they should deem proper, and to add the proceeds of it to the income which they were to use or accumulate.

We are therefore of opinion that one-sixth of testator's estate at the date of each of testator's children's death without issue, passed in fee to the survivors, so that Mrs. Coffey, the last survivor, took five-sixth of the estate in fee, and had in the other one-sixth an equitable life estate with power of appointment to her children.

By the will of Mrs. Coffey the five-sixths which we have found she took in fee was devised to the Fidelity Trust Company of Philadelphia, and the other one-sixth to the plaintiffs in equal shares. The plaintiffs are therefore entitled to a decree that the parties hold together and undivided; that Evelyn Chew Roberts is the owner of one-twelfth of the lands described in the bill; that Lilian Chew Moorhead is the owner of one-twelfth of the land; and the intervening defendant, the Fidelity Trust Company of Philadelphia, the owner of five-sixths thereof; and that partition be made to and among the parties in these proportions, according to the practice in equity.

Let a decree be drawn accordingly.

The decree was entered and plaintiffs appealed.

*Error assigned* was the decree of the court.

*John E. Winner,* with him *John D. Brown* and *Thomas M. Brown,* for appellants.—The law is well settled that where a testator's intention is clearly disclosed by his

will that his devisees are to have only a life estate, the estate so devised will not be enlarged into a fee, even though there be no limitation over of the principal: Shower's Est., 211 Pa. 297; Slifer's Est. (No. 1), 54 Pa. Superior Ct. 14, affirmed 244 Pa. 289; Gibbons v. Connor, 220 Pa. 395; Deibert's App., 78 Pa. 296; Steinmetz's Est., 168 Pa. 171; Shirk's Est., 242 Pa. 95.

*Maurice B. Saul,* of *Prichard, Saul, Bayard & Evans,* with him *Dalzell, Fisher & Hawkins,* for appellees, cited: Woelpper's App., 126 Pa. 562; Siddall's Est., 180 Pa. 127.

PER CURIAM, April 14, 1919:

We concur in the view expressed by the learned court below in disposing of this case, that by the provision in testator's will where he directs that in case any of his children should die without leaving issue at the time of his death, the evident intention of testator was that the share of such child should be paid to the survivor or survivors of them; that the words "after the death of my sons and daughters" cannot be taken to mean after the death of all of them, as otherwise we would have the testator directing a share to be paid to the survivors of his children when there could in the natural order be none surviving. Such other features of the will as provoked discussion were very carefully considered and properly adjudged. Nothing can be profitably added to the clear and convincing opinion of the learned court below, and on that opinion the decree of the court is affirmed.